[Cite as *Schneider v. Razek*, 2015-Ohio-410.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### Nos. 100939 and 101011

## KRISTINA SCHNEIDER

PLAINTIFF-APPELLANT

vs.

## DANNY R. RAZEK

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-08-321983

**BEFORE:** Rocco, P.J., E.A. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** February 5, 2015

**ATTORNEY FOR APPELLANT**

Joseph G. Stafford
Anne C. Fantelli
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114

**ATTORNEY FOR APPELLEE**

Brent L. English
Law Offices of Brent L. English
The 820 Building
820 Superior Avenue West, 9th Floor
Cleveland, Ohio 44113-1818

**GUARDIAN AD LITEM**

Eric Laubaucher
Laubaucher & Company
20525 Center Ridge Road, Suite 626
Rocky River, Ohio 44116

KENNETH A. ROCCO, P.J.:

{¶1}  In this consolidated appeal, plaintiff-appellant Kristina Schneider appeals from two orders entered by the Domestic Relations Division of the Cuyahoga County Court of Common Pleas relating to a domestic violence civil protection order the court had originally entered in 2008 protecting Schneider and her two children from contact with defendant-appellee Danny Razek, her ex-husband and the children's father.   Schneider contends that the trial court abused its discretion in (1) granting Razek's motion to terminate the civil protection order and (2) denying Schneider's motion to extend the civil protection order, which, by its terms was scheduled to expire on September 25, 2013.   For the reasons that follow, we affirm the trial court's judgment.

**Factual Background and Procedural History**

{¶2} The civil protection order at the center of this appeal was issued as a result of an incident that occurred on June 25, 2008, when Razek allegedly assaulted and raped Schneider after finding her in bed with another man during a period of apparent marital separation.   At the time, Schneider was living in one home owned by the parties with the two children, and Razek was living in a separate home owned by the parties, although both parties retained access to both homes.

{¶3}  On July 1, 2008, Schneider filed a complaint for divorce, and on August 20, 2008, a motion for a civil protection order.   The motion was granted ex parte, and an ex parte civil protection order was entered that same date.   On October 16, 2008, after a full hearing on the motion, the magistrate issued her decision.[1]   Razek filed objections to the magistrate's decision. The trial court overruled the objections, and on January 15, 2009, entered a modified full hearing

---

[1]The same magistrate who conducted the full hearing on the motion for protection order issued in 2008 conducted the hearing on the motion to modify or terminate the CPO at issue here.

civil protection order (the "CPO") that was to be effective until September 25, 2013. Schneider and Razek divorced on March 8, 2010. Over the years, the CPO was modified various times, usually by agreement of the parties, to allow Razek increased contact and visitation with the children.

{¶4} On May 29, 2012, after the CPO had been in place for nearly three-and-a-half years, Razek filed a motion to modify or terminate the CPO.[2] Razek argued that the CPO was no longer necessary to protect Schneider or the children because (1) it was based on a single incident that occurred four years earlier, (2) the parties had since divorced, having "amicably resolved their marital differences," (3) Razek had undergone counseling and been assessed by multiple mental health professionals who had found no concerns relating to his mental or emotional health, and (4) the children's guardian ad litem had filed multiple reports indicating that Razek is not a danger to his children. Although she opposed the termination of the CPO, Schneider did not file a written opposition to the motion.

{¶5} In connection with his motion to modify or terminate the CPO, Razek sought to take Schneider's deposition, purportedly to determine what opposition she might have to the motion and what, if any, factual basis supported her opposition. Schneider's deposition was first noticed for July 12, 2012, but did not go forward on that date. Instead, on July 12, 2012, Schneider filed a motion for protective order, claiming that her counsel was out of the office due to "emergency unforeseen medical issues" and that no substitute counsel was available to attend the deposition. Schneider did not claim that there was any other basis on which the deposition should be avoided.

---

[2]This was Razek's second motion to modify or terminate the CPO. He filed a similar motion on November 5, 2010. That motion did not go to hearing despite numerous settings and was ultimately dismissed after the parties failed to timely submit an agreed judgment entry reflecting an in-court agreement that had been reached regarding the issue.

{¶6} On July 18, 2012, Razek filed an opposition to the motion for protective order and a motion to compel and for sanctions based on Schneider's failure to appear at the deposition. Razek claimed that his counsel had made numerous attempts to schedule (and thereafter reschedule) Schneider's deposition, but that no alternate dates had been provided by Schneider's counsel for the deposition. As a sanction, he sought to preclude Schneider from offering any evidence at the hearing on his motion to modify or terminate the CPO. Schneider did not respond to the motion, and the court did not rule on the motion to compel or the motion for protective order.

{¶7} On December 11, 2012, Razek filed a second motion to compel and motion for sanctions related to his efforts to depose Schneider. In his motion, Razek claimed that he had attempted to take Schneider's deposition on eight different occasions between the time he had filed his motion to modify or terminate the CPO in May 2012 and the filing of his second motion to compel and for sanctions — July 12, September 14 and 20, October 15, 16, and 23, and December 7, and 10, 2012 — and that, each time, he had issued a notice of deposition in accordance with Civ.R. 30(D), but Schneider failed to appear for her deposition. In his motion, Razek detailed each of the various reasons he had purportedly been given by Schneider's counsel as to why the deposition could not go forward, including the unavailability and illness of counsel and Schneider's work schedule. He asserted that notwithstanding Razek's counsel's willingness to schedule the deposition on a weekend or off hours, if necessary, to accommodate Schneider and her counsel's schedules, Schneider and her counsel had failed to provide any date or time when the deposition could go forward. Razek once again requested that Schneider be precluded from offering any evidence at trial as a sanction for her failure to appear for her deposition.

**{¶8}** During this time period, i.e., from July 2012 through January 2013, Schneider filed numerous motions to continue, most of which were requested due to her counsel's health issues or conflicts her counsel had with other cases. The trial court advised Schneider several times that, due to the extensions that had already been provided, if her counsel was unable to proceed due to his health issues, she could consider retaining alternate counsel.

**{¶9}** The magistrate conducted an evidentiary hearing on the motion to modify or terminate the CPO beginning on July 24, 2012, and continuing on January 23, 24, and March 4, 2013. On January 23, 2013, the magistrate granted Razek's motion to preclude Schneider from testifying at the hearing due to her repeated failures to appear for deposition.

**{¶10}** Razek testified at the hearing and he also introduced testimony from (1) Dr. Nancy Huntsman, a psychologist, formerly with the Family Conciliation Services in Cuyahoga County, who had conducted a risk assessment in 2008 to determine whether the children were at risk of any physical or other injury by Razek, (2) Dr. Mark Lovinger, a clinical psychologist who performed an assessment of Razek in August-September 2008 to determine whether Razek was a danger to his children, (3) Attorney Laubacher, the guardian ad litem for the children, (4) Leneigh White, a professional clinical counselor who provided Razek with court-ordered anger management counseling and continued counseling thereafter, (5) Patrick Moner, a family friend who supervised Razek's visitation with the children, and (6) Marianne Razek, Razek's mother, who also supervised Razek's visitation with the children. At the time of the hearing, the couple's children were 10 and 7.

**{¶11}** A summary of the evidence presented at the hearing follows. Razek testified that he is a UPS pilot who resides in Alaska and flies primarily international routes. He testified that he owns a home in Strongsville, Ohio that is approximately 500 feet away from Schneider's

residence, but that he stays at a home his mother owns in Parma when he is in Ohio to visit his sons and his mother lives in the Strongsville house that is close to Schneider.

{¶12} Razek acknowledged that between November 2008 and prior to the parties' divorce in March 2010, he had, at times, violated the terms of the CPO with Schneider's consent. He testified that while the divorce was pending through 2009, he and Schneider continued to talk and see each other. He testified that in November 2008, Schneider called him and asked him to send a video email wishing their son a happy birthday and that shortly thereafter, Schneider showed up at his home and wanted to talk about what was going on. He testified that they started to pick their kids up from school and have lunch together, did Christmas shopping together, had dinner with her parents together, and went on a brief vacation together with their kids and joint friends. Razek testified that their interaction stopped when Schneider got mad at him because his counsel "made it public knowledge" during one of the pre-divorce hearings that Razek was seeing the children unsupervised with Schneider's consent. Razek testified that, thereafter, until November 2012 when modifications to the CPO were made that enabled him to communicate with Schneider regarding the children (with one exception when Schneider got on the phone when he was speaking with one of their children), he had not had any contact with Schneider except during court proceedings related to their divorce.

{¶13} On cross-examination, Razek admitted that despite the provision of the CPO precluding him from possessing weapons, he had taken his children to a friend's house to shoot weapons and that, at that time, he helped his children handle their weapons, but did not shoot any weapons himself.

{¶14} As to why he seeking to dissolve the CPO, Razek testified that the CPO prevented him from effectively co-parenting his children, kept him from being good father and having a

normal interaction with his sons and ex-wife, caused complications with work and fishing, and that he wanted to move on with his life. With respect to work, Razek testified that the CPO caused him and his flight crew to be delayed during international travel and made it impossible for him to become an air marshal. He testified that the CPO also makes it difficult for him to fish at home in Alaska because of the risk of bears approaching and the need to use a weapon to protect himself against bears.

{¶15} Razek testified that he had no problems with drugs or alcohol, had not had any harsh words with Schneider since time of divorce, had never been charged with any violations of the CPO, and that, other than the June 2008 incident that led to the issuance of the CPO, had not been charged with any crimes. With respect to the June 2008 incident, he testified that although he believed what transpired was "wrong," he was not sure if the "inappropriate sexual interaction" he had with Schneider during the incident was consensual.[3]

{¶16} Dr. Nancy Huntsman, a psychologist, formerly with the Family Conciliation Services in Cuyahoga County, testified that Razek's case was referred to her in August 2008 and that, at that time, she conducted a risk assessment to determine whether the children were at risk of any physical or other injury by Razek. Her assessment was based on a two-hour interview of Razek and a review of psychological testing conducted by Dr. Lovinger, a home investigation report, and hair and urine drug screening tests. She testified that at that time, she concluded that there was a "very low risk of physical violence" by Razek but that it would be "100 percent safe" if supervised visitation was implemented. She also testified that she met with Schneider and Razek together in December 2008 and that they reached an agreement at that time that Razek

---

[3]It is troubling to this court that Razek still does not take responsibility for his actions in 2008. That there can be any doubt that his "inappropriate sexual contact" with Schneider was not consensual is preposterous.

could visit the boys with the supervision of Schneider's father. She testified that she met with the couple a second time in April 2009 and that they then agreed supervised visitation was no longer required. She testified that she recalled Schneider stating that the fact that Razek was living close to her house made her uncomfortable, but recalled no specific complaints of any incidents that had occurred involving harm to the boys. She did not recall Schneider saying that she had any specific fear for her safety or well-being with respect to Razek and that at one point, Dr. Huntsman stepped out of the room so that Schneider and Razek could have a private meeting to discuss how to resolve their parenting issues. Dr. Huntsman testified that there was nothing in Razek's behavior that caused her to believe that Razek was unstable, was inappropriate with Schneider, or was in any way a danger to his sons. She testified that she had not met with Razek since 2009 and had not done a further evaluation of him since that time.

{¶17} Dr. Mark Lovinger, a clinical psychologist to whom Razek was referred by his counsel, performed an assessment of Razek in August-September 2008 to determine whether Razek posed a danger to his children. Dr. Lovinger testified that after he met with Razek on several occasions and performed psychological testing on him, he did not find any evidence that Razek would be dangerous to his children. He testified that he had no opportunity to meet with Schneider, and that, therefore, he termed his report as "preliminary." Neither Dr. Huntsman or Dr. Lovinger performed any type of domestic violence counseling or treatment to Razek.

{¶18} Leneigh White, a professional clinical counselor, testified that she first met Razek in the context of providing him with court-ordered anger management counseling in May 2009 and that she continued to see him for counseling on a bi-monthly basis thereafter. She testified that she had 30 sessions with Razek from May 2009-March 2010. She testified that during her treatment of Razek, she saw no indication that he would pose a danger to anyone, including his

ex-wife and children. She testified that in September 2009, she saw Schneider, at Razek's request. She testified that, at that time, the couple was considering reconciliation and was doing more activities together as a family, and that Razek had asked Schneider to speak with White about the issues Schneider had with him so that White could help Razek better understand those issues and move forward toward reconciliation. White testified that Schneider told her that she believed the CPO would be lifted upon the completion of the requirements imposed by the criminal court, i.e., the anger management counseling, and that, at that time, she planned to drop it because she had no concerns about him being a danger to the children. White testified that Schneider told her she wasn't sure about the possibility of reconciliation and that they discussed how to move into a co-parenting situation. She testified that Schneider said that, at times, she was still uncomfortable around Razek and that she didn't like that they lived so close to one another. White testified that they spoke for about an hour and that there was nothing about their conversation that led her to believe that Schneider believed Razek posed a danger to her. White testified that Razek had successfully completed his anger management treatment and that she had "no doubt" that he could safely parent his children.

{¶19} Eric Laubacher, the children's guardian ad litem, also testified. He testified that he had been involved in developing a parenting plan for the children and that he had recommended that the supervised visitation requirement be lifted six months after the divorce decree in 2010, but that due to various delays, supervised visitation continued until November 2012, causing frustration and anger on the part of Razek. Attorney Laubacher testified that every time he has spoken with Schneider, she has expressed fear for herself from Razek. He testified that Schneider had indicated to him that Razek had shown up at places she did not expect him to be (e.g., a restaurant where the babysitter was), that she had concerns about him talking to her

childcare providers, and that since the CPO had been modified to permit contact related to the children, Razek had been calling her a lot. He testified that he believes Schneider's continued fear of Razek is rational, given the circumstances, but that he has no personal knowledge of any behavior by Razek that would have caused Schneider to fear for her safety since the CPO was entered. Attorney Laubacher also testified that he believed that Razek expressed anger that was "over the top" at the November 2012 hearing, but that he was not aware of Razek saying or doing anything to Schneider in response to that anger. He testified that he does not believe that Razek has taken full responsibility for his actions and that that concerns him. He also expressed concerns that if the CPO was lifted, Razek could move in close proximity to Schneider and that he thinks distance between them "is a good thing." Attorney Laubacher recommended that the CPO be terminated as to the children but made no recommendation as to whether CPO should be modified or terminated as to Schneider.

{¶20} Patrick Moner and Razek's mother both testified that Razek had a good, healthy relationship with sons. Moner further testified that Schneider had never expressed any fear to him about Razek continuing to harm her, just about losing her house due to attorney fees because Razek kept taking her to court.

{¶21} After Razek's witnesses completed their testimony on March 4, 2013, Schneider requested that the magistrate reconsider her exclusion of Schneider's testimony as a sanction for failing to comply with Razek's requests for her deposition. The magistrate denied her request.

{¶22} On September 24, 2013, a day before the CPO was scheduled to expire by its terms, Schneider filed a motion to extend the CPO. The reasons supporting her request to extend the CPO were set forth in an affidavit attached to the motion, including: (1) that the June 2008 events that gave rise to the CPO were "terrorizing, violent and out of control" and still continue to

"haunt" Schneider and cause her to fear Razek; (2) that she fears for her safety if Razek is permitted to own and use firearms; (3) that she fears that Razek would move into the nearby Strongsville residence he owns and that his living that close to her would cause her "extreme anxiety and fear" because "he would be able to see my residence, know what I am doing, and know when I am home alone," (4) that she believes Razek is "extremely vengeful" and will "seek revenge" on her if the CPO is lifted, and (5) that Razek "excessively contacts" the children and that she believes he will "attempt to contact me excessively and/or harass me" if the CPO was lifted. Other than with respect to the original June 2008 incident, Schneider did not allege that Razek had threatened her or the children in any way and did not allege any specific facts supporting her fears that if the CPO was lifted, Razek would harass her or seek to cause her further harm. Schneider did not request an ex parte hearing or ruling on her motion to extend the CPO.

{¶23} On January 15, 2014, after the CPO had already expired by its terms, the magistrate issued an order granting Razek's motion to terminate the CPO and terminating the CPO effective March 4, 2013 (the last day of the hearing on the motion). On January 17, 2014, the trial court adopted the magistrate's order pursuant to Civ.R. 65.1(F)(3)(c).[4] The magistrate explained the basis for her decision to terminate the CPO effective March 4, 2013, as follows:

> Dr. Huntsman, Dr. Lovinger and Attorney Laubaucher testified credibly and professionally. Leneigh White, Patrick Moner and Marianne Razek testified with basic credibility. Respondent testified with basic credibility.

---

[4]Under Civ.R. 65.1(F)(3)(c), when a magistrate has denied or granted a protection order after a full hearing, "the court may adopt the magistrate's denial or granting of the protection order upon review of the order and a determination that there is no error of law or other defect evident on the face of the order." Civ.R. 65.1(F)(3)(c)(ii). A court's adoption of a magistrate's denial or granting of a protection order is effective when signed by the court and filed with the clerk. Civ.R. 65.1(F)(3)(c)(v).

Considering all the factors contained in Ohio Revised Code 3113.31(E)(8)(b) Respondent has sustained his burden of proving, by a preponderance of the evidence, that a Protection Order is no longer needed and was no longer needed effective March 4, 2013.

{¶24} On January 15, 2014, the magistrate also issued an order summarily denying Schneider's motion to extend the CPO. Once again, the trial court adopted the magistrate's order on January 17, 2014.

{¶25} On January 29, 2014, Schneider filed "preliminary objections" to the trial court's January 17, 2014 orders granting Razek's motion to terminate the CPO and denying Schneider's motion to extend the CPO along with a notice of intent to file supplemental objections once the hearing transcript had been received and filed. That same day she also filed a notice of appeal from both orders in Appeal No. 100939.

{¶26} On February 3, 2014, while Appeal No. 100939 was pending, Schneider filed a motion to reinstate or extend the CPO and a motion to stay execution of the January 17, 2014 orders during her appeal. The trial court denied these motions on February 14, 2014. That same day, Schneider filed her second appeal, Appeal No. 101011. Her notice of appeal in Appeal No. 101011 referenced the same January 17, 2014 orders as her earlier appeal. Appeal No. 101011 is, therefore, duplicative of Appeal No. 100939.

{¶27} In her appeals, Schneider raises the following five assignments of error:

Assignment of Error Number I:
The trial court/magistrate erred and/or abused its/her discretion by denying appellant's motion to extend domestic violence civil protection order; and motion to reinstate/motion for stay of January 17, 2014 judgment entries.

Assignment of Error Number II:

The trial court/magistrate erred and/or abused its/her discretion by granting Razek's motion to modify/terminate civil protection order under the facts and circumstances of this matter; and the decision is against the manifest weight of the evidence.

Assignment of Error Number III:
The trial court/magistrate erred and/or abused its/her discretion by granting Razek's motion to modify/terminate civil protection order, as Razek did not meet his burden, and the order is against the manifest weight of the evidence.

Assignment of Error Number IV:
The trial court/magistrate erred and/or abused its/her discretion by excluding Kristina from testifying and presenting any witnesses or evidence at trial, which operated as a determination and dismissal on procedural grounds, without consideration for less severe sanctions, or if sanctions were actually warranted, and by failing to appreciate the fact that a motion for protective order and other procedural issues existed warranting the denial of Razek's motions.

Assignment of Error Number V:
The trial court/magistrate erred and/or abused its/her discretion by granting Razek's motion to modify/terminate civil protection order, as Razek's motion and at least part of his evidence and claims is barred by estoppel, res judicata, and/or issue/claim preclusion.

**Law and Analysis**

**Pendency of Objections to the Trial Court's January 17, 2014 Orders**

{¶28} Before we consider the merits of Schneider's appeal, we first address the unusual procedural posture in which this case comes to us. As an initial matter, we first consider whether Schneider's appeal is premature due to her pending objections to the trial court's adoption of the magistrate's orders terminating the CPO and denying Schneider's motion to extend the CPO, which were timely filed under Civ.R. 65.1(F)(3)(d). We conclude that it is not.

{¶29} Civ.R. 65.1(G), which addresses the appeal of such orders,[5] provides:

_____

[5]It merits observation that the orders that are the subject of this appeal are not, per se, orders "adopti[ng], modif[ying], or rejecti[ng] a magistrate's *denial or granting* of a protection order after a full hearing." (Emphasis added.) Civ.R. 65.1(F)(3)(c). They are orders adopting the magistrate's decisions to terminate a protection order and to deny a motion to extend (or renew) a protection order. Nevertheless, they are part of the "special statutory proceedings under R.C. 3113.31" to which Civ.R. 65.1 applies and have a similar impact as a decision denying or

Notwithstanding the provisions of any other rule, an order entered by the court under division (F)(3)(c) of this rule [i.e., a court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order], *with or without the subsequent filing of objections*, is a final, appealable order that can be appealed upon issuance of the order. The timely filing of objections under division (F)(3)(d) of this rule shall stay the running of the time for appeal until the filing of the court's ruling on the objections. (Emphasis added.)

**{¶30}** Civ.R. 65.1 was enacted, in part, to expedite the process for obtaining ruling on matters related to protection orders. Because some of the provisions of Civ.R. 53, including the filing and consideration of objections to magistrate's decisions, are "incompatible" with this goal, Civ.R. 65.1 "uniquely appli[es]" to special proceedings under R.C. 3113.31. Staff Notes to Civ.R. 65.1.

**{¶31}** Civ.R. 65.1(G) states that a court's adoption, modification, or rejection of a magistrate's decision denying or granting a protection order is a final, appealable order that "can be appealed upon issuance of the order," "with or without the subsequent filing of objections." Thus, the fact that Schneider filed objections to the orders at issue does not preclude the immediate appeal of those orders. Civ.R. 65.1(G) also provides that the filing of objections under Civ.R. 65.1(F)(3)(d) "stay[s]" the "running of the time for appeal" until the trial court rules on the objections. However, that provision only extends the time for appeal where the parties elect to have the trial court consider their objections first and do not immediately appeal the court's order. *See* Staff Note to Civ.R. 65.1 (Civ.R. 65.1(F)(3)(d)(i) "is intended to encourage the parties, as an alternative to immediate appeal, to allow the trial court to review a court's adoption, modification, or rejection of a magistrate's protection order ruling based on the record,

---

granting a protection order. Civ.R. 65.1(A); *see also* R.C. 3113.31(E)(3)(c), (8). Consistent with the mandate in Civ.R. 65.1(A) that "[t]he provisions of [Civ.R. 65.1] * * * be interpreted and applied in a manner consistent with the intent and purposes of [the] protection order statutes," we find that the orders at issue are within the scope of Civ.R. 65.1(G).

by filing objections in the trial court."). It does not render Schneider's notice of appeal premature.

{¶32} Thus, the issue we must decide is whether, whereas here, a party both files objections to the court's adoption, modification, or rejection of a magistrate's decision relating to a protection order under Civ.R. 65.1(F)(3)(d) and, at the same time, or shortly thereafter, appeals that court order, the pending objections trump the notice of appeal. The dissent posits that because Schneider's objections were timely, they must be resolved before the merits of her appeal can be heard under Civ.R. 65.1(G). We disagree. We believe the better course — one that is more consistent with the language and objectives of Civ.R. 65.1 — is to find that the filing of a valid notice of appeal trumps the objections, i.e., that the notice of appeal renders the objections that were previously filed under Civ.R. 65.1(F)(3)(d)(i) moot.

{¶33} Where an appeal is filed while timely objections to a magistrate's decision under Civ.R. 53(D)(3)(b) are pending, App.R. 4(B)(2) expressly requires that the appellate court, "upon suggestion of any of the parties," remand the matter to the trial court to rule on the objections and "stay appellate proceedings until the trial court has done so." There is no similar provision with respect to objections filed under Civ.R. 65.1(F)(3)(d).

{¶34} The impact of a ruling precluding the immediate hearing of an appeal when objections are timely filed under Civ.R. 65.1(F)(3)(d), prior to the filing of a notice of appeal, would perhaps be less of a concern where, as here, one party chooses to file both objections to, and a notice of appeal from, a court order adopting, modifying, or rejecting a magistrate's decision relating to a protection order. However, there are circumstances — such as where a protection order is entered that is more limited in scope than the protection order sought — where more than one party may seek to challenge the court order adopting, modifying, or rejecting the magistrate's

decision. Given the purposes of Civ.R. 65.1, we do not believe it was intended that one party should lose the right he or she would otherwise have to immediately appeal that court order (and to have that appeal then heard) simply because another party has filed objections to that order.

**{¶35}** Accordingly, we find that, notwithstanding Schneider's unresolved objections under Civ.R. 65.1(F)(3)(d) to the trial court orders at issue in this case, Schneider's appeal is not premature.

### Termination of Civil Protection Order

**{¶36}** Turning now to the merits of Schneider's appeal, for ease of discussion, we consider Schneider's assignments of error out of order, addressing her first assignment of error last and her second and third assignments of error first, and together where appropriate.

**{¶37}** In her second and third assignments of error, Schneider argues that the trial court erred in granting Razek's motion to terminate the CPO, claiming that (1) Razek failed to meet his burden of proof under R.C. 3113.31(E)(8)(b) and (2) the trial court's decision to terminate the CPO was against the manifest weight of the evidence. We disagree.

**{¶38}** R.C. 3113.31(E)(8) provides that a court "may modify or terminate" a protection order entered after a full hearing if the moving party shows, by a preponderance of the evidence, that termination or modification of the protection order "is appropriate" because (1) the protection order is "no longer needed" or (2) "the terms of the original protection order * * * are no longer appropriate." In considering whether to whether to modify or terminate a protection order or consent agreement, R.C. 3113.31(E)(8)(c) directs the court to consider all relevant factors, including, but not limited to, the following:

> (i) Whether the petitioner consents to modification or termination of the protection order or consent agreement;

(ii) Whether the petitioner fears the respondent;

(iii) The current nature of the relationship between the petitioner and the respondent;

(iv) The circumstances of the petitioner and respondent, including the relative proximity of the petitioner's and respondent's workplaces and residences and whether the petitioner and respondent have minor children together;

(v) Whether the respondent has complied with the terms and conditions of the original protection order or consent agreement;

(vi) Whether the respondent has a continuing involvement with illegal drugs or alcohol;

(vii) Whether the respondent has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for an offense of violence since the issuance of the protection order or approval of the consent agreement;

(viii) Whether any other protection orders, consent agreements, restraining orders, or no contact orders have been issued against the respondent pursuant to this section, section 2919.26 of the Revised Code, any other provision of state law, or the law of any other state;

(ix) Whether the respondent has participated in any domestic violence treatment, intervention program, or other counseling addressing domestic violence and whether the respondent has completed the treatment, program, or counseling;

(x) The time that has elapsed since the protection order was issued or since the consent agreement was approved;

(xi) The age and health of the respondent;

(xii) When the last incident of abuse, threat of harm, or commission of a sexually oriented offense occurred or other relevant information concerning the safety and protection of the petitioner or other protected parties.

{¶39} When reviewing a challenge related to a civil protection order, "our standard of review depends on the nature of that challenge." *Allan v. Allan*, 8th Dist. Cuyahoga No. 101212, 2014-Ohio-5039, ¶ 11, citing *Abuhamda-Sliman v. Sliman*, 161 Ohio App.3d 541,

2005-Ohio-2836, 831 N.E.2d 453, ¶ 9 (8th Dist.). Because R.C. 3113.31 expressly authorizes courts to "'craft protection orders that are tailored to the particular circumstances,'" challenges to the scope of a protection order are reviewed for abuse of discretion. *Id.*, quoting *Reynolds v. White*, 8th Dist. Cuyahoga No. 74506, 1999 Ohio App. LEXIS 4454, *10-11 (Sept. 23, 1999). When the issue is whether a protection order should have issued at all, however, the question on review is whether there was "sufficient credible evidence" to support a finding that the respondent had engaged in acts or threats of domestic violence. *Id.* at ¶ 12.

{¶40} In this case, involving a challenge to the trial court's decision to terminate a civil protection order, we believe, based on the permissive language of the statute — i.e., a court "may" modify or terminate a protection order — and the nature of the determinations involved — i.e., whether the protection order is "no longer needed" or its terms are "no longer appropriate" — the appropriate standard of review is abuse of discretion. *See, e.g., Twitty v. Bowe*, 10th Dist. Franklin No. 09AP-953, 2010-Ohio-1391, ¶ 6, citing *Jones v. Rose*, 4th Dist. Hocking No. 09CA7, 2009-Ohio-4347, ¶ 5. However, even if the "question on review" was whether there was sufficient credible evidence to support a finding that the civil protection order was no longer needed or its terms were no longer appropriate, i.e., a manifest weight standard of review, we would still find no error by the trial court, based on the record in this case.

{¶41} An abuse of discretion is more than an error of law or judgment; rather, it implies that a trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Dowhan v. Dowhan*, 11th Dist. Lake No. 2012-L-037, 2012-Ohio-5830, ¶ 39 ("term 'abuse of discretion' is one of art, connoting judgment exercised by a court, which does not comport with reason or the record"), citing *Caudill v. Thomas*, 11th Dist. Portage No. 2009-P-0087, 2011-Ohio-524, ¶ 17.

**{¶42}** Weight of the evidence concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In assessing whether a finding is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20; *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶43}** In weighing the evidence, we are guided by a presumption that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). This presumption arises because the trier of fact had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* Judgments supported by competent, credible evidence going to all the essential elements of the claim will not be reversed on appeal as being against the manifest weight of the evidence.

**{¶44}** The CPO was based on a single incident of domestic violence against Schneider that occurred, nearly five years earlier, in June 2008. While horrific, the incident arose out of what appear to have been fairly unique, emotionally charged circumstances in the history of the parties' relationship. R.C. 3113.31(E)(8)(c)(x), (xii).

**{¶45}** With respect to the couple's children, it was undisputed that, by the time of the hearing on the motion, Razek had regular communications and visitation with his children, and

there was no evidence of any problems or safety concerns related to Razek's dealings with his children.

{¶46} With respect to Schneider, the evidence was less clear cut. Schneider did not consent to modification or termination of the CPO and there was evidence that she continued to fear and/or feel uncomfortable around Razek based on what had occurred nearly five years in the June 2008 incident. R.C. 3113.31(E)(8)(c)(i), (ii). Although Attorney Laubaucher testified that Schneider had told him that she continued to fear Razek, that Razek had shown up at places she did not expect him to be, that she had concerns about Razek talking to her childcare providers, and that Razek had been calling her a lot regarding the children, he also testified that he had no personal knowledge of any behavior by Razek that would have caused Schneider to fear for her safety since the CPO had been entered. No evidence was presented at the hearing that Razek had threatened Schneider at any time since June 2008 or had otherwise said or done anything since that time to suggest that he might pose a danger to her or the children.

{¶47} Contrary, to Schneider's argument, Razek was not required to prove her fear "was no longer reasonable" in order to terminate the protection order. Although, as Schneider argues, "[t]hreats of violence constitute domestic violence * * * if the fear resulting from those threats is reasonable," *Lavery v. Lavery*, 9th Dist. Summit No. 20616, 2001 Ohio App. LEXIS 5360, *4 (Dec. 5, 2001), Schneider's continuing fear from the June 2008 incident was simply one of the statutory factors for the trial court to take into account in determining whether it was appropriate to terminate the CPO. R.C. 3113.31(E)(8)(c)(ii).

{¶48} With respect to the circumstances and proximity of the parties, the testimony established Razek lives primarily in Alaska and works internationally as a UPS pilot and that when he is in Ohio, he lives in Parma. R.C. 3113.31(E)(8)(c)(iv). Although Razek testified

that owns a house close to Schneider, his mother lives there now, and there was no evidence suggesting any plans on the part of Razek to move back there. Based on the testimony of Razek, Razek's mother, Moner, and Attorney Laubacher, the parties appeared to be able to interact as necessary in relation to their children but had no other personal relationship. R.C. 3113.31(E)(8)(c)(iii), (iv). White, Razek's counseler, testified that Razek had undergone anger management counseling and had completed the court-ordered anger management counseling he was ordered to receive. Although the counseling Razek received was not a "domestic treatment program" and was not specifically directed to domestic violence issues, it appeared to address what led to the specific incident of domestic violence in this case, i.e., Razek's inability to control his anger in a particularly emotionally charged situation involving Schneider. R.C. 3113.31(E)(8)(c)(ix).

{¶49} Although there was some evidence Razek had violated the terms of the CPO in 2009 or 2010 by increasing his interaction with Schneider and/or the children — e.g., picking the children up from school together, having lunch or dinner together, and spending a brief vacation together — with her consent, there was no evidence he had done so since that time. R.C. 3113.31(E)(8)(c)(v).

{¶50} As to the remaining factors specified in R.C. 3113.31(E)(8)(c), the testimony and other evidence established that Razek had no "continuing involvement with illegal drugs or alcohol," that he had not been convicted of or pled guilty to any offense of violence since the issuance of the CPO, and that no other protection orders, consent agreements, restraining orders, or no contact orders have been issued against him at any time. R.C. 3113.31(E)(8)(c)(vi)-(viii). Razek's age or health was not a relevant factor. R.C. 3113.31(E)(8)(c)(xi).

**{¶51}** The civil domestic violence protection order is designed to provide the court with a tool in which "to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1). Protection orders are, therefore, intended to prevent future domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34, 41, 679 N.E.2d 672 (1997). Domestic violence includes "[a]ttempting to cause or recklessly causing bodily injury" and "[p]lacing another person by the threat of force in fear of imminent serious physical harm." R.C. 3113.31(A)(1). Here, there was no evidence to suggest that Schneider or her children continued to be danger of physical harm from Razek. Schneider has cited no cases in which it was found to be an abuse of discretion to terminate a protection order where, as here, there was no evidence of any continued threats or other incidents that would suggest that she or the children were in continued danger from Razek.

**{¶52}** Upon our review of the record, we conclude that there was substantial competent, credible evidence supporting the magistrate's determination (adopted by the trial court) that the CPO was no longer needed as of March 4, 2013. Evidence was presented on each of the relevant factors under R.C. 3113.31(E)(8)(c), and the January 17, 2014 order expressly references the magistrate's consideration of those factors. The magistrate determined that Drs. Huntsman and Lovinger and Attorney Laubaucher "testified credibly and professionally" and that Razek, White, Moner, and Marianne Razek testified with "basic credibility." Accordingly, the trial court's determination that the CPO was no longer needed was not against the manifest weight of the evidence and the trial court did not abuse its discretion in terminating the CPO. Schneider's second and third assignments are hereby overruled.

**Exclusion of Schneider's Testimony as a Discovery Sanction**

{¶53} In her fourth assignment of error, Schneider argues that the trial court abused its discretion "by excluding [her] from testifying and presenting any witnesses or evidence at trial" as a discovery sanction for failing to permit her deposition to be scheduled.

{¶54} A trial court has discretion in determining a sanction for a discovery violation. *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). We find no abuse of that discretion here.

{¶55} First, Schneider was not prohibited from presenting "any witnesses or evidence at trial." She was only precluded from testifying herself. When the magistrate denied Schneider's request to reconsider her ruling precluding Schneider from testifying after the close of Razek's case, Schneider indicated that she had no other witnesses to call and no other evidence to offer (other than the admission of one exhibit). Although she would have presumably been the best witness to testify regarding her continued fear of Razek, Schneider did not claim that she was the only witness who could testify regarding the relevant issues. Indeed, she had filed a witness list naming several other potential witnesses. If there had been threats, incidents of violence, or other misconduct that supported her continued fear of Razek, presumably others could have testified regarding them. Schneider was also able to introduce evidence regarding her continued fears of Razek through her cross-examination of several of Razek's witnesses, including Attorney Laubacher. Accordingly, Schneider made the choice to offer no witness testimony and to present no other evidence in support of her position at the hearing.[6]

---

[6]Schneider did not proffer what her testimony would have been had she been permitted to testify. Accordingly, it is impossible to tell whether her testimony would have made a difference. The affidavit she submitted in support of her motion to renew the CPO, however, did not disclose any facts supporting her continued fear of Razek, i.e., it did not disclose any other incidents or threats of violence, other than the June 2008 incident.

{¶56}   With respect to whether Schneider's testimony should have been excluded as a sanction for her failure to appear for deposition, the magistrate heard argument on the issue twice — once on January 23, 2013, before any substantive trial testimony began and again, at the close of Razek's presentation of his evidence, on March 4, 2013.   In granting Razek's motion at the beginning of the case, the magistrate stated, in relevant part:

> This is a serious, serious matter, and I would sure hate to see it being held on without all the testimony being brought to court; however, you will not be doing your discovery in trial.   You will not do your discovery in trial.   The matter was not delayed back in 2008.
> It's been delayed from — the first time I had you here was on June 28th, and it's been delayed over and over and over again.   It is intolerable for everybody.
>
> * * * Ms. Schneider, if the depositions were not allowed to happen because of the actions on your part, whether it's your lawyer or you, then [Razek's counsel] has a point: Discovery cannot be had at trial; and I am sure that you don't think I will delay it more so that the discovery can happen that's been blocked all this time.
>
> Now, [Schneider's counsel], if you have a better solution, I'm glad to hear it — not blame or anything else — but a better solution, I'm glad to hear it.   Do you? * * * Do you have a better solution to this, because as you well know in any line of work, if someone is not able to do their job, the job doesn't stop, it can't. It can't.
>
> And I am sure, [Schneider's counsel], if your client was the one who was looking for a protection order, I think that it would have happened.   It would have been made to have happened. * * *
>
> [SCHNEIDER'S COUNSEL]: I think the underlying merits — I don't see how the court can terminate or modify the CPO without hearing from the Petitioner.
>
> THE MAGISTRATE: Well, I think it would be certainly not the way I would choose to do it. * * * I'm sure it certainly wouldn't be the way your client would choose to do.   If the discovery has not been allowed to happen and because it's the fault of your client, what else can the court do.

The delay that's been caused by your client, whether it's through her or you, the delay that's been caused by your client can't be tolerated any more, and it won't be tolerated any more; and if your client has refused to cooperate with discovery since May, I can't imagine what you expect the court to do.

So, [Razek's counsel], I'm going to grant your motion. * * * Do you think the court hadn't given this tremendous thought? Do you think the court hadn't tried to come up with a better way in the many months that this has been going on: That one of the parties in this case hadn't had the opportunity to be heard[.] * * * Do you think I haven't thought about this? I know, of course, I have given it thought.

I don't know where your client stands, but I have an idea. It cannot be allowed to continue. We are set for trial today. * * *

{¶57} Schneider offered no suggestion in response to the magistrate's request that she suggest an alternative "solution" that would permit her to testify while avoiding the prejudice that would result to Razek if Schneider were permitted to testify without having appeared for deposition.

{¶58} After Razek presented his case, Schneider requested that the magistrate reconsider the exclusion of her testimony. The magistrate denied her request, explaining her reasoning, as follows:

I cannot agree with you much more that a major issue in this matter is whether or not the petitioner still fears the respondent. I know it is right in the statute. We all know that.

I also cannot agree with [Razek's counsel] much more in that Rules of Civil Procedure are meant to be followed.

Discovery needs to be had. We can't ignore it. We can't ignore it. And we certainly can't ignore it, and then come to court, and say, well, this affects the most basic premise of this case.

And so our ignoring of discovery rules should in itself be ignored. * * *

I have heard nothing that would compel the court to reconsider. And that I have heard nothing to indicate to the Court that — that why [Razek's counsel]'s

attempts were met — without success over and over and over and over again.   I could say that eight times.

And I cannot imagine how that is excusable, and how you would think that the Court would not consider that in determining how this trial is to be conducted.

The Court has not questioned your client as to whether she knew any of this was going on.   I don't know if she did or if she didn't.

But I do know that depositions were attempted unsuccessfully over and over and over again.

[Schneider's counsel]'s illness, of course, is a factor.   And it has been a factor in prolonging these proceedings, and prolonging them, and prolonging them.

There comes a point when the illness of counsel calls for new counsel.

* * * I have granted [Razek's counsel]'s motion.   And, although, you have asked me to reconsider it, and I have, I am still granting [Razek's counsel]'s motion.   Your client will not testify.

**{¶59}**   The magistrate acted within her discretion in excluding Schneider's testimony based on Civ.R. 37(D) and 37(B)(2).   Civ.R. 37(D) provides, in relevant part:

If a party * * * fails * * * to appear before the officer who is to take his deposition after being served with a proper notice * * * the court in which the action is pending on motion and notice may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (a), (b), and (c) of subdivision (B)(2) of this rule. * * *

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(C).

**{¶60}**   Civ.R. 37(B)(2) authorizes the court, following a failure to appear for deposition, to make "such orders in regard to the failure as are just, and among others the following:"

(a) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(b) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party * * *.

**{¶61}** Schneider argues that because (1) she filed a motion for protective order related to her deposition, (2) the magistrate made no finding of bad faith or willfulness related to her failure to appear for deposition, and (3) no order was entered compelling her deposition, the trial court's exclusion of her testimony as a discovery sanction was an abuse of discretion. We disagree.

**{¶62}** Schneider has not claimed that any of the eight prior depositions was not properly noticed. Although Schneider claims that she filed a motion for protective order "in regard to the deposition issue," the only motion for protective order she filed was a motion filed on July 12, 2012, to prevent the deposition that had been noticed for that date from going forward on that date. That motion was based solely on the fact that Schneider's counsel was out of the office due to "emergency unforeseen medical issues" and no substitute counsel was available to attend the deposition. Schneider did not argue, in her July 12, 2012 motion for protective order, that there was any other basis on which her deposition should be avoided or that there was any reason the deposition should not go forward on another date, e.g., she did not claim that the deposition was sought for purposes of harassment or that there was no relevant information to be obtained by deposing her. Schneider did not dispute Razek's claims that her deposition was properly noticed seven other times after July 12, 2012, and yet Schneider did not appear, or that despite his

numerous requests, no other dates were provided when Schneider could be made available at any time during nearly six months.

{¶63} Civ.R. 37(D) provides a one-step method for immediate imposition of sanctions by motion when a party fails to appear at a properly noticed deposition. The method for obtaining an advance court determination to avoid the imposition of immediate sanctions is to move for a protective order, pursuant to Civ.R. 26(C), before the time for compliance occurs. *Dafco, Inc. v. Reynolds*, 9 Ohio App.3d 4, 457 N.E.2d 916 (10th Dist.1983), paragraph one of the syllabus. "[T]rial courts are in the best position to determine whether sanctions are necessary or appropriate, as they are familiar with the exchanges between the parties, the attorneys, and the manner in which they conduct themselves throughout the litigation." *Harris v. MC Sign Co.*, 11th Dist. Lake No. 2013-L-115, 2014-Ohio-2888, ¶ 25. "'There is no question that trial courts have authority to impose sanctions where the actions of a party operate to thwart the judicial process.'" *Id.*, quoting *Telecom, Ltd. v. Wisehart & Wisehart, Inc.*, 10th Dist. Franklin No. 11AP-1147, 2012-Ohio-4376, ¶15.

{¶64} Although Schneider claims the trial court could not exclude her testimony as a sanction for failing to appear for deposition in the absence of a specific finding of willfulness or bad faith, she has not cited any case in which it was held that bad faith or willfulness was required before the testimony of a witness could be properly excluded for failure to appear, on numerous occasions, for a properly noticed deposition. Courts have generally held that a finding of bad faith or willfulness is required only where *a dismissal or a default judgment* is entered as a sanction for a discovery violation. *See, e.g., Toney v. Berkemer,* 6 Ohio St.3d 455, 458-459, 453 N.E.2d 700 (1983) (observing that harsh remedies of dismissal and default should only be used when the failure to comply has been due to "willfulness, bad faith, or any fault of petitioner," and

that where appellant failed to submit damage documentation (medical bills and lost wages), the "appropriate sanction * * * is the preclusion of evidence on these subjects" rather than default judgment).

{¶65} Nor, as Schneider claims, is the exclusion of her testimony akin to entering a dismissal in the case. As discussed above, only her testimony was excluded. Schneider was free to offer testimony from other witnesses or to introduce other evidence in support of her position but chose not to do so. Finally, even if evidence of bad faith or willfulness were required, on this record, it is perhaps a close call. The record reflects that the magistrate struggled with whether to preclude Schneider from testifying. Although the magistrate did not make a specific finding that Schneider had acted willfully or in bad faith in failing to appear for her deposition and although Schneider's counsel clearly had some work conflicts and health issues that impacted deposition scheduling, the failure to appear for deposition eight times and refusal to make Schneider available for deposition at any other date or time for nearly six months may border on "bad faith." *Huntington Natl. Bank v. Zeune*, 10th Dist. Franklin No. 08AP-1020, 2009-Ohio-3482, ¶ 19 ("A trial court * * * need not use any particular 'magic words' * * * as long as the record substantiates willful inaction or bad faith.").

{¶66} Schneider also argues that (1) her deposition should not have been required because R.C. 3113.31 "does not specifically authorize discovery" and Razek's attempt to depose Schneider was "merely a red herring to manufacture alleged discovery issues and harass [her] (given the restrictions of the CPO)" and (2) Razek's motion to compel and for sanctions should have been denied because the motion was not supported by affidavits or other evidence. Schneider, however, did not raise any of these arguments below; therefore, they are not properly considered here. Schneider's fourth assignment of error is overruled.

**Limitation of Evidence Based on Estoppel, Res Judicata, or Issue/Claim Preclusion**

{¶67} In her fifth assignment of error, Schneider argues that Razek's motion to terminate or modify the CPO should have been denied because much of the evidence he offered relating to the assessment of the risk of danger he presented (or lack thereof) were from witnesses (i.e., Drs. Huntsman and Lovinger) who conducted their assessments in 2008 and 2009 — pre-dating a number of agreed modifications that had been made to the CPO since that time — or to whom he had allegedly "withheld information regarding his criminal acts," i.e., White. She claims that Razek should have been precluded from offering this evidence based on estoppel, res judicata, and/or issue or claim preclusion. Once again, this argument lacks merit.

{¶68} The testimony from Drs. Huntsman and Lovinger regarding their determinations in 2008 and 2009 that Razek presented no danger to his children was relevant to whether a CPO was still necessary as to them. The fact that Razek had not been seen by these witnesses since 2008 or 2009 and could not speak to his conduct since that time went to the weight to be given their testimony. It did not require that their testimony be excluded. Likewise, the fact that Razek may not have fully disclosed all of the circumstances of the June 2008 incident to White did not require that her testimony be excluded. These witnesses were subject to extensive cross-examination by Schneider regarding these issues.

{¶69} Likewise, although the parties had previously agreed to modify the CPO, these prior modifications did not preclude Razek from seeking further modifications or a termination of the CPO under R.C. 3113.31. The issue presented by Razek's motion was whether, as of the date of the hearing, the CPO was no longer necessary or appropriate. This was not an issue that was previously litigated or decided. Accordingly, Schneider's fifth assignment of error is overruled.

**Motion to Extend the CPO and/or to Reinstate the CPO or Stay the January 17, 2014**

**Orders**

{¶70} In her first assignment of error, Schneider argues that the trial court abused its discretion in denying (1) her motion to extend the CPO and (2) her motion to reinstate the CPO or stay the trial court's January 17, 2014 orders terminating the CPO and denying her motion to extend the CPO. However, Schneider did not appeal the trial court's February 14, 2014 order denying her motion to reinstate the CPO or stay the January 17, 2014 orders. As such, those orders are not part of this appeal.[7]

{¶71} With respect to her motion to extend the CPO, Schneider argues that — even though she did not request an ex parte hearing — because the CPO was due to expire a day later, the trial court was obligated to hold an ex parte hearing on her motion to extend the CPO, to avoid a lapse in the CPO. There is, however, no such requirement under R.C. 3113.31. Only if a party requests an ex parte order is the court required, under R.C. 3113.31(D)(1), to hold an ex parte hearing. Where no ex parte hearing is requested, R.C. 3113.31(D)(3) provides that "the court shall proceed as in a normal civil action and grant a full hearing on the matter."

{¶72} Schneider also argues that, although captioned as a motion to extend the CPO, her motion should have been regarded as a motion to renew the CPO by the trial court and that the trial court abused its discretion in summarily denying her motion to extend the CPO without holding a full hearing on the matter.

---

[7]Even if the trial court's February 14, 2014 order were considered in this appeal, it would not constitute reversible error. Schneider has not identified any basis upon which the trial court could properly "reinstate" the CPO. At the time she filed her motions, she had already appealed the January 17, 2014 orders to this court. Nor has Schneider identified any ground upon which to stay the January 17, 2014 orders. Indeed, this court denied a similar motion to stay filed in this court, concluding that Schneider had not presented any evidence of a "present threat of future violence" to warrant a stay. Further, the CPO automatically expired on its terms on September 25, 2013.

**{¶73}** R.C. 3113.31(E)(3)(c) provides that "[a]ny protection order issued * * * pursuant to this section may be renewed in the same manner as the original order or agreement was issued or approved." In its January 17, 2014 order, however, the trial court terminated the CPO effective March 4, 2013. Given this ruling, as of September 24, 2013, when Schneider filed her motion to extend the CPO, there was no longer any CPO to extend or renew. Accordingly, the trial court did not abuse its discretion in denying Schneider's motion to extend to CPO. Schneider's first assignment of error is overruled.

**{¶74}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
MELODY J. STEWART, J., DISSENTS
(SEE ATTACHED OPINION)

MELODY J. STEWART, J., DISSENTING:

**{¶75}** I respectfully dissent from the decision to affirm. Although the majority opinion is well-reasoned, I would reverse and remand to the trial court to first consider whether it had the

authority to "modify" an *expired* protection order,[8] and if so, then to rule on Schneider's objections in the first instance.

**{¶76}** Although Civ.R. 65 gives Schneider the right to file an appeal in this matter, the notice of appeal does not vitiate her objections to the court's adoption of the magistrate's decision. There is no question that a party has the right to file objections. Civ.R. 65.1(F)(3)(d)(i) states:

> A party may file written objections to a court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing, or any terms of such an order, within fourteen days of the court's filing of the order. If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.

**{¶77}** Civ.R. 65.1 gives an aggrieved party two courses of action when dealing with an an order adopting a magistrate's decision: object or appeal. *Heimann v. Heekin*, 1st Dist. Hamilton No. C-130613, 2014-Ohio-4276, ¶ 9. In this case, Schneider did both.

**{¶78}** It is true that Civ.R. 65.1(G) gives us jurisdiction to rule on the court's adoption of the magistrate's decision, but I think that doing so in this instance would be improvident in light of the objections Schneider filed. Our preference as an appellate court is always that the lower court should resolve legal issues in the first instance because it preserves appellate resources by allowing the court to rectify errors before review on appeal. This is especially important in cases like this, where the court adopted the magistrate's decision without giving the parties an opportunity to object and provide a record to demonstrate the claimed error(s).

---

[8]I agree, however, with the majority's observation at footnote five with regard to whether the express text of Civ.R. 65.1(F)(3)(d)(i) referring to the court's adoption, modification, or rejection of a magistrate's "denial or granting" of a protection order encompasses a decision to grant a modification or termination of a protection order. I also agree that it does, given that a termination or extension of a protection order is functionally equivalent to a denial or granting of a protection order. Certainly, if the intent behind Civ.R. 65.1 is to develop rules that are "uniquely applicable" to such proceedings, it would make little sense to interpret the rule in a way that would cause the courts to default back to the provisions of Civ.R. 53.

{¶79} Although Civ.R. 65.1(F)(3)(c)(ii) permits the trial court to adopt the magistrate's decision after reviewing the order for any legal defects on its face, doing so deprives the court of the ability to consider evidentiary objections because the court's adoption of the magistrate's decision was made without any transcript of the hearing before the magistrate (Schneider characterized her objections as "preliminary" because she needed time to obtain a transcript of the magistrate's hearing).

{¶80} Ordinarily, a court can enter a judgment adopting a magistrate's decision during the 14-day period permitted for the filing of objections to the magistrate's decision, but timely objections act as an automatic stay of the judgment until the court disposes of the objections. *See* Civ.R. 53(D)(4)(e)(i). That rule, however, does not apply given that Civ.R. 65.1(G) makes it clear that a judgment adopting a magistrate's decision is a final, appealable order "with or without the subsequent filing of objections[.]" Nevertheless, Civ.R. 65.1(G) also makes clear that although an order adopting a magistrate's decision is a final, appealable order, it is one that "*can be appealed*." (Emphasis added.) The use of the word "can" means that an appeal is discretionary, not mandatory. This interpretation is consistent with Civ.R. 65.1(G) because that section also states: "The timely filing of objections under division (F)(3)(d) of this rule shall stay the running of the time for appeal until the filing of the court's ruling on the objections."

{¶81} The court correctly believed it lacked jurisdiction to rule on Schneider's objections while her appeal was pending. *See State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978). Nevertheless, those objections were filed before a notice of appeal was filed and should be ruled upon by the court in the first

instance.[9]    If the goal behind Civ.R. 65.1 is to provide an "expedited process" for obtaining protection orders, see Staff Notes Division (F), the fastest way to accomplish this goal is to let the court rule on the objections and cure any potential defects in its order.

{¶82} I would therefore remand this cause for the court to consider and rule on Schneider's objections to the court's adoption of the magistrate's decision based on the evidence adduced at the hearing.[10]

---

[9]When objections remain pending as the 30-day time period in which to file a notice of appeal runs, it is not surprising that counsel would, in an abundance of caution, file a notice of appeal in order to preserve the right to appeal even though, as previously mentioned, the timely filing of objections stays the running of the time for appeal until the court rules on the objections. Filing a notice of appeal as the 30-day time period approaches cannot reasonably be considered as abandoning those objections.

[10]But as previously noted, whether the court had the authority to modify an expired protection order (particularly when the request to extend or renew the order was not granted) would be the first consideration.