[Cite as *C.K. v. D.K.*, 2022-Ohio-647.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

C. K.

    Appellee

    v.

D. K.

    Appellant

C.A. No.    21CA011733

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    19DV086303

DECISION AND JOURNAL ENTRY

Dated: March 7, 2022

CARR, Presiding Judge.

{¶1} Appellant, D.K., appeals the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2} D.K. and C.K were married in 1996. Two children were born of the marriage- a son, W.K. and a daughter, M.K. Several weeks after C.K. filed a petition for divorce in early June of 2019, D.K. drove to the marital residence with C.K.'s permission to discuss several matters. D.K. informed C.K. that he was set to lose his job. When D.K. broached the subject of reconciliation, the conversation grew contentious. C.K. went into her bedroom to retrieve her purse so that she could leave the house. D.K. blocked the door to prevent C.K. from exiting the bedroom. When C.K. eventually made her way to the garage, D.K. grabbed her phone out of her hand. During the struggle, C.K.'s purse fell to the ground. D.K. took C.K.'s phone to his vehicle and retrieved a handgun that he had recently purchased. C.K. called 911. D.K.

proceeded to walk into the nearby woods and fire a gunshot. Based on prior comments, C.K. feared that D.K. had committed suicide. When D.K. emerged from the woods he was placed under arrest by officers who had responded to the scene.

{¶3} The following day, on June 27, 2019, C.K. filed a petition for a domestic violence civil protection order against D.K. on behalf of herself and the children. The trial court granted an ex parte civil protection order and set the matter for a full hearing. After the full hearing, at which D.K. did not appear, the trial court issued a five-year domestic violence civil protection order that identified C.K., W.K., and M.K. as protected parties.

{¶4} On August 23, 2019, D.K. filed a motion to either modify or terminate the protection order. After a hearing, the magistrate issued a decision denying D.K.'s motion. D.K. filed objections to the magistrate's decision and C.K. filed a brief in opposition to the objections. Thereafter, the trial court issued a decision overruling D.K.'s objections and adopting the magistrate's decision as the order of the court.

{¶5} D.K. subsequently filed a second motion to modify the protection order on November 13, 2020, wherein he sought to remove his children as protected parties. C.K. filed a motion for Civ.R. 11 sanctions on the basis that D.K.'s motion was groundless and filed only for the purposes of harassment. The trial court held a hearing on the pending motions via Zoom. The trial court subsequently issued a journal entry denying both the motion for modification of the protection order as well as the motion for sanctions.

{¶6} On appeal, D.K. raises five assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT'S DECISION DENYING THE MOTION TO REMOVE
THE MINOR CHILDREN FROM THE CIVIL PROTECTION ORDER WAS
AN ABUSE OF DISCRETION[.]

{¶7}    In his first assignment of error, D.K. contends that the trial court abused its discretion in denying his motion to modify the civil protection order.  This Court disagrees.

{¶8}    This Court reviews a trial court's order ruling on a motion for modification of a civil protection order for an abuse of discretion.  *J.M. v. L.J.*, 9th Dist. Lorain No. 19CA011549, 2020-Ohio-4419, ¶ 11.  An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary or unconscionable in its ruling.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9}    "Either the petitioner or the respondent of the original protection order or consent agreement may bring a motion for modification or termination of a protection order or consent agreement that was issued or approved after a full hearing."  R.C. 3113.31(E)(8)(b).  "The court may modify or terminate as provided in division (E)(8) of this section a protection order or consent agreement that was issued after a full hearing under this section."  R.C. 3113.31(E)(8)(a).  "The moving party has the burden of proof to show, by a preponderance of the evidence, that modification or termination of the protection order or consent agreement is appropriate because either the protection order or consent agreement is no longer needed or because the terms of the original protection order or consent agreement are no longer appropriate."  R.C. 3113.31(E)(8)(b).

> In considering whether to modify or terminate a protection order or consent agreement issued or approved under this section, the court shall consider all relevant factors, including, but not limited to, the following:

(i) Whether the petitioner consents to modification or termination of the protection order or consent agreement;

(ii) Whether the petitioner fears the respondent;

(iii) The current nature of the relationship between the petitioner and the respondent;

(iv) The circumstances of the petitioner and respondent, including the relative proximity of the petitioner's and respondent's workplaces and residences and whether the petitioner and respondent have minor children together;

(v) Whether the respondent has complied with the terms and conditions of the original protection order or consent agreement;

(vi) Whether the respondent has a continuing involvement with illegal drugs or alcohol;

(vii) Whether the respondent has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for an offense of violence since the issuance of the protection order or approval of the consent agreement;

(xiii) Whether any other protection orders, consent agreements, restraining orders, or no contact orders have been issued against the respondent pursuant to this section, section 2919.26 of the Revised Code, any other provision of state law, or the law of any other state;

(ix) Whether the respondent has participated in any domestic violence treatment, intervention program, or other counseling addressing domestic violence and whether the respondent has completed the treatment, program, or counseling;

(x) The time that has elapsed since the protection order was issued or since the consent agreement was approved;

(xi) The age and health of the respondent;

(xii) When the last incident of abuse, threat of harm, or commission of a sexually oriented offense occurred or other relevant information concerning the safety and protection of the petitioner or other protected parties.

R.C. 3113.31(E)(8)(c).

{¶10} In his most recent motion for modification of the civil protection order, D.K. sought to remove his children as protected parties. D.K. noted that it had been 15 months since the incident which gave rise to the protection order, that W.K. had recently reached the age of

majority, and that D.K. and C.K. were close to finalizing their divorce. D.K. attached an affidavit wherein he averred that he had missed notable events in his children's lives such graduations, sporting events, and birthdays. D.K. contended that W.K. was now an adult who could "speak for himself" regarding whether the protection order was necessary. D.K. further argued that M.K.'s inclusion in the protection order had prevented him from seeking parental rights in the divorce proceeding.

{¶11} The parties convened for a hearing on the motion for modification on the same day that the divorce proceeding was finalized. D.K. introduced a certificate showing that he had participated in a four-hour class on recognizing and defusing potential domestic violence situations. D.K. was also seeking ongoing treatment for depression and anxiety. D.K. acknowledged that he was convicted of one count of violating the protection order in the Elyria Municipal Court. D.K. explained that he sought to modify the protection order because he wanted to reestablish a relationship with his children and bring additional love and care to their lives.

{¶12} C.K. testified that she did not consent to the modification because she continued to fear for her children's safety. C.K. indicated that prior to the issuance of the protection order, D.K. told her that he no longer considered W.K. and M.K. to be his children. C.K. testified that M.K. had not expressed a desire for the protection order to be modified.

{¶13} C.K. suggested that D.K. had engaged in a pattern of behavior aimed at getting back at her that had disrupted the lives of the children. C.K. explained that there is an Amazon Alexa in the house where she resides with M.K. and W.K. On one occasion, the "drop-in feature" on the Alexa was activated. C.K. testified that she did not activate the feature and that the only other person with the capability to do so was D.K. C.K. further suggested that D.K.

disrupted mail service to the home when he did a change of address for the entire household. In the fall of 2019, C.K. discovered that her debit card had been cancelled. D.K. was the only person other than herself who could have accessed the card's account. C.K. also suggested that there was a situation in June 2020 when the OnStar services on her vehicle were activated. D.K. was the only other person with the information necessary to activate those services which allowed the location of her vehicle to be tracked. When the trial court inquired of C.K. regarding her opinion that D.K. had done hurtful things to the children, C.K. discussed additional incidents, including an occasion where D.K. locked W.K. out of his Xbox Live account. D.K. changed the password which prevented W.K. from accessing the system. This meant that W.K. was unable to use several hundred dollars' worth of games that he had purchased.

{¶14} When W.K. took the witness stand, he indicated that he did not want the protection order to be modified because he feared for his safety around D.K. W.K. suggested that D.K. bullied him. W.K. testified about an occasion in January 2020 when he became uncomfortable because he saw D.K. drive through the campus at his high school.[1] W.K. further observed D.K. drive by the house where he lives with his mother and his sister on at least a half dozen occasions. On cross-examination, W.K. explained that he was not troubled by the fact that D.K. could not attend his high school graduation. When the trial court asked W.K. to expand on his reference to bullying, W.K. described an incident in 2018 where W.K. intentionally embarrassed him in front of a friend who was at their house to work on a school project. W.K. has a strong dislike of clowns of which D.K. was well aware. When the friend's mother arrived to provide a ride home, D.K. started telling the mother about W.K.'s issues with clowns. In front

---

[1] W.K. indicated that this incident occurred in January of 2020. W.K. noted that he had since graduated from high school and enrolled at the University of Akron.

of his friend and his friend's mother, D.K. turned on the television and played a scene from a movie that made W.K. extremely uncomfortable. W.K. testified that D.K. played the scene with the aim of embarrassing W.K.

{¶15} In denying D.K.'s motion for modification of the protection order, the trial court reviewed the factors set forth in R.C. 3113.31(E)(8)(c) and made numerous findings. In addition to finding that none of the protected parties consented to modification, the trial court determined that there was credible testimony that both M.K. and W.K. continued to fear D.K. The trial court noted that C.K. and D.K. had recently concluded a contentious divorce proceeding and that C.K. had sincere concerns that D.K. might use his relationship with M.K to get back at her. Furthermore, the trial court discussed several events where D.K. had engaged in disruptive behavior and found that he had failed to comply with the terms of the protection order on multiple occasions. The trial court concluded that D.K. had failed to demonstrate by a preponderance of the evidence that a modification of the protection order in regard to W.K. and M.K. was warranted.

{¶16} On appeal, D.K. stresses that he was only required to prove by a preponderance of the evidence that the terms of the original protection order were no longer appropriate. It is well settled that the "[p]reponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations and citations omitted). *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7; *State v. Leatherwood*, 9th Dist. Summit No. 15132, 1991 WL 262890, *1 (Dec. 11, 1991) ("[p]reponderance of the evidence means the greater weight of the evidence, that is evidence that outweighs or overbalances the evidence opposed to it."). D.K. contends that, in light of the evidence presented at the hearing, the trial court abused its discretion when it

determined that he failed to meet the preponderance standard in regard to removing W.K. and M.K. from the protection order.

{¶17} After a careful review of the record, we cannot say that the trial court's decision to deny the motion was unreasonable, arbitrary, or unconscionable. D.K. presented evidence showing that he had completed a four-hour domestic violence class and that he was seeking treatment for depression and anxiety. Notably, however, the vast majority of the evidence presented at the hearing did not support the conclusion that the protection order should be modified. W.K. testified that he feared being around his father and that he did not want the protection order to be modified. C.K. gave similar testimony with respect to M.K., indicating that she feared D.K. might use his relationship with M.K. to get back at C.K. Although D.K. now argues that this line of testimony was purely speculative, W.K. and C.K. detailed a number of events which suggested that D.K. had disrupted the children's lives. Furthermore, while D.K. disputes the trial court's findings that he repeatedly drove by the marital residence, that he drove to W.K.'s high school, and that he activated the OnStar services on C.K.'s vehicle, this Court remains mindful that the trial court was in the best position to resolve credibility issues. *See State v. P.J.M.*, 8th Dist. Cuyahoga No. 109017, 2020-Ohio-3805, ¶ 31. Under these circumstances, we cannot say the trial court abused its discretion in denying D.K.'s motion.

{¶18} In light of the foregoing, the first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S DECISION DENYING THE MOTION TO REMOVE THE MINOR CHILDREN FROM THE CIVIL PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS WELL AS THE SUFFICIENCY OF THE EVIDENCE[.]

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING THE MOTION TO REMOVE THE MINOR CHILDREN FROM THE CIVIL PROECTION ORDER[.]

{¶19} D.K. couches his second assignment of error in terms of the sufficiency of the evidence and the weight of the evidence. In his third assignment of error, D.K. suggests the trial court erred as a matter of law in denying his motion for a modification of the protection order.

{¶20} "When reviewing a challenge related to a civil protection order, 'our standard of review depends on the nature of that challenge.'" *Schneider v. Razek*, 8th Dist. Cuyahoga Nos. 100939, 101011, 2015-Ohio-410, ¶ 39, quoting *Allan v. Allan*, 8th Dist. Cuyahoga No. 101212, 2014-Ohio-5039, ¶ 11. When a trial court either issues a protection order in the first instance or renews the initial protection order, this Court reviews the evidence presented in support of the protection order to determine whether sufficient evidence was presented or whether the protection order is against the weight of the evidence. *See Lundin v. Niepsuj*, 9th Dist. Summit No. 28223, 2017-Ohio-7153, ¶ 18-19. Significantly, the instant appeal does not involve a trial court order granting an initial petition for a protection order or a motion for renewal. Instead, the instant appeal involves the trial court's denial of a motion to modify a protection order. A trial court's ruling on a motion to modify or terminate a protection order is reviewed for an abuse of discretion. *Brown v. Naff*, 2d Dist. Miami No. 2011-CA-17, 2012-Ohio-1770, ¶ 9; *Razek* at ¶ 40.

{¶21} In support of his second and third assignments of error, D.K. cites a number of cases where the issuance of protection orders pertaining to children were reversed on direct appeal because the petitioners failed to carry their evidentiary burden. D.K. repeatedly argues that there was no evidentiary basis to include the children in the protection order in the first

instance, let alone remain on the protection order. D.K. points to the "uncontroverted fact" that neither child was present during the incident which originally gave rise to the protection order.

{¶22} To the extent that D.K. challenges the evidentiary foundation underpinning the initial protection order issued in 2019, he is barred from raising those issues at this time. The doctrine of res judicata bars any claims between the parties that were either litigated or could have been litigated in a prior proceeding. *See Brooks v. Kelly*, 144 Ohio St.3d 322, 2015-Ohio-2805, ¶ 7. As issues pertaining to the initial issuance of the protection order could have been raised in a direct appeal, but were not, D.K. is now barred from raising them under the doctrine of res judicata. *See Brooks* at ¶ 7.

{¶23} To the extent that D.K. contends that the trial court should have modified the protection order in light of the evidence presented at the modification hearing, we note that we addressed this issue in resolving D.K.'s first assignment of error and concluded that the trial court did not abuse its discretion in denying the motion to modify the protection order. *See* Discussion of Assignment of Error I, *supra*.

{¶24} The second and third assignments of error are overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW BY INCLUDING THE MINOR CHILDREN AS PROTECTED PARTIES[.]

### ASSIGNMENT OF ERROR V

THE TRIAL COURT COMMITTED PLAIN ERROR BY INCLUDING THE MINOR CHILDREN AS PROTECTED PARTIES[.]

{¶25} In his fourth and fifth assignments of error, D.K. raises an array of legal arguments wherein he contends that the children should have never been included in the protection order at the time it was first issued in 2019. D.K. goes as far as to suggest that the

trial court committed plain error when it initially listed W.K. and M.K. as protected parties. These issues are barred by res judicata as they could have been raised at an earlier stage in the proceedings. *See Brooks* at ¶ 7.

{¶26} D.K.'s fourth and fifth assignments of error are overruled.

### III.

{¶27} D.K.'s assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, J.
SUTTON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

MICHAEL J. TONY, Attorney at Law, for Appellant.

SCOTT R. SYLKATIS, Attorney at Law, for Appellee.