[Cite as *Bressi v. Thompson*, 2024-Ohio-2244.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

JAMES BRESSI, et al.

    Appellants

    v.

JERADINE THOMPSON, et al.

    Appellees

C.A. No.    30445

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2020-09-2467

DECISION AND JOURNAL ENTRY

Dated: June 12, 2024

SUTTON, Judge.

**{¶1}** Plaintiffs-Appellants, James Bressi and Annette Consentino-Bressi ("the Bressis"), appeal the judgment of the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**Relevant Background**

**{¶2}** This appeal arises from litigation spanning over a decade which includes a number of lawsuits, three of which are relevant to this matter. The initial lawsuit, *Thompson v. Summit Pain Specialists, Inc.*, Summit County Court of Common Pleas Case No. 2013-05-2353 ("Thompson Action"), concerned personal injury claims of 46 former female patients of Mr. Bressi who claimed they suffered injuries at his hand. The Thompson Action resolved when the parties entered into an agreement titled the Confidential Bressi Master Settlement Agreement ("CBMSA").

{¶3}    Subsequent to the Thompson Action, the Bressis filed a complaint in *John Collins, Receiver v. Geiger*, Summit County Court of Common Pleas Case No. 2014-04-2198 ("Collins Action"). In the Collins Action, the trial court determined, among other things, the CBMSA was a valid and enforceable agreement between the parties. This issue arose when Mr. Bressi attempted to file an amended complaint in the Collins Action after the appointed receiver, which all parties had requested, stepped into Mr. Bressis' shoes in the litigation for specified purposes set forth in the appointing order. Mr. Bressi also argued the CBMSA was void because the receiver breached the confidentiality agreement by referencing the CBMSA in the Collins Action. Mr. Bressi appealed the trial court's decision that determined the CBMSA to be valid and enforceable. In *Collins v. Geiger*, 9th Dist. Summit No. 29361, 2020-Ohio-21, this Court affirmed the trial court's decision.

{¶4}    The Bressis commenced the present action on September 4, 2020, wherein they disputed the enforceability of the CBMSA. The Bressis named as defendants, in this action, the 46 former female patients of Mr. Bressi ("Thompson Defendants"). The Bressis also named as defendants Lawrence J. Scanlon and David C. Perduk, the attorneys who represented the Thompson Defendants in the Thompson Action, and John Carey Collins, the receiver appointed to protect and recover assets for the benefit of the Thompson Defendants.

{¶5}    The complaint, in Count One, sought declaratory judgment against all defendants to render the CBMSA void because it allegedly did not include a confidentiality provision which the Bressis alleged was "the omission of a material body of Section VI" of the CBMSA. Additionally, the complaint alleged fraudulent inducement to enter into the CBMSA against all defendants (Count Two); breach of the CBMSA (Count Two);[1] unjust enrichment (Count Three)

---

[1] The Bressis classified two of the counts in the complaint as "Count Two[.]"

against all defendants; civil conspiracy (Count Five) against Receiver Collins and Attorneys Scanlon and Perduk; intentional breach of fiduciary duty (Count Six) against Receiver Collins; and punitive damages (Count Seven) against Receiver Collins, and Attorneys Scanlon and Perduk.

{¶6} The Bressis sought leave to sue Receiver Collins through a motion for summary judgment. After an oral hearing and full briefing on the matter, the trial court denied the Bressis' motion for summary judgment based upon the doctrine of res judicata, finding both claim and issue preclusion. The Bressis did not challenge the trial court's decision on appeal.

{¶7} Subsequent to filing answers wherein they raised the affirmative defenses of res judicata and collateral estoppel, the Thompson Defendants and Attorneys Scanlon and Perduk filed motions for summary judgment. In their motions for summary judgment, the Thompson Defendants and Attorneys Scanlon and Perduk argued the Bressis are barred by the doctrines of res judicata and collateral estoppel from relitigating whether the CBMSA is enforceable. Further, Attorneys Scanlon and Perduk argued they owed no duty to protect the interests of the Bressis because the Bressis were not their clients and Attorneys Scanlon and Perduk did not engage in malicious conduct. Attorneys Scanlon and Perduk also argued the Bressis' attorneys were responsible for any delay in the release of the prejudgment order of attachment and that the Bressis are barred by the doctrine of res judicata in their attempts to set aside the CBMSA. Lastly, Attorneys Scanlon and Perduk argued the Bressis did not have standing to challenge the amount of their litigation expenses as it pertained to the Thompson Defendants.

{¶8} In their consolidated memorandum in opposition to the Thompson Defendants' and Attorneys Scanlon and Perduk's motions for summary judgment, the Bressis admitted they voluntarily entered into the CBMSA. Further, the Bressis argued they are not barred by the doctrine of res judicata from bringing the claims in this lawsuit because the parties and claims in

the Collins Action are different from those in this matter and the Bressis allegedly did not have access to certain settlement conference transcripts from 2016 until after March 19, 2019, when the trial court issued its judgment in the Collins Action.[2]

{¶9} The trial court granted the Thompson Defendants' motion for summary judgment, as well as the summary judgment motion of Attorneys Scanlon and Perduk. In so doing, the trial court stated:

> Count One, both Counts Two * * *, and Count three of the [c]omplaint are based and premised on the CBMSA. * * * [The Bressis] raise the same arguments in this case that were the subject of this [c]ourt's [o]rder in Case No. CV 2014 04 2198. In its March 19, 2019 Journal Entry * * *, this [c]ourt granted [Receiver Collins'] [m]otion to [e]nforce the [CBMSA]. The [c]ourt held in its March 19, 2019 Journal Entry:
>
> After multiple hearings were held with the [c]ourt, the parties entered into a valid [CBMSA] that was placed on the record on October 31, 2016. The [c]ourt finds that the terms of the parties' [CBMSA] were certain, clear, and reviewed in full detail. * * * The parties arrived at their settlement after multiple [c]ourt hearings were held and the [CBMSA] was placed on the record after hours of negotiations. The parties were represented by legal counsel and had plenty of opportunity to ask questions and/or to question the terms and conditions of the [CBMSA]. [The Bressis] indicated they were in full agreement with the [CBMSA]. There was no ambiguity or confusion as to the terms and conditions of the parties' [CBMSA]. The [CBMSA] pertained to the claims of [the Thompson Defendants] where, if [the Thompson Defendants] succeeded on their claims at trial, the jury potentially could have rendered a multi-million-dollar verdict. The [Bressis] were represented by counsel and sufficient consideration was given for the terms and conditions set forth in the [CBMSA]. On December 26, 2016, [the Bressis], in exchange for assigning any litigation rights emanating from the original tort and malpractice cases, agreed to pay a sum of money as a settlement in an amount far less than the [Thompson Defendants] believed that they could reasonabl[y] recover from [the Bressis] if they went to trial. Many of the putative causes of action would involve a great deal of discovery costs with uncertain results. There is absolutely no evidence that [the Thompson Defendants] and/or the assignment to [Receiver Collins] breached the [CBMSA].

---

[2] Although the Bressis alleged they did not have access to these transcripts, they were aware as early as 2016 that the third release pursuant to the CBMSA was not signed and they had knowledge regarding the confidentiality provision, or lack thereof, in the CBMSA.

As established by the multiple hearings that were held in this matter, and specifically the October 31, 2016 record, there was an offer, acceptance, contractual capacity, consideration, and mutual asse[n]t. The parties' [CBMSA] is enforceable.

* * *

(Alterations in original.)[3]  The trial court continued:

As previously set forth, the validity and enforceability of the [CBMSA] was fully addressed in the [Collins Action] * * * [.]  *Res judicata* bars the Bressis' claims as asserted in Count One, both Counts two and Count three.  * * *

{¶10}  Consequently, "[t]he [c]ourt [found] that [the Bressis'] lawsuit lacks any merit, either in law, or, on the facts."   After the Bressis filed their notice of appeal, the Thompson Defendants and Attorneys Scanlon and Perduk filed a joint motion for attorney fees pursuant to R.C. 2323.51.  Receiver Collins also filed a motion for sanctions, pursuant to Civ.R. 11 and R.C. 2323.51.  This Court remanded the matter to the trial court for the purpose of allowing the trial court to rule on these motions.  After an evidentiary hearing, the trial court granted attorney fees, pursuant to R.C. 2323.51, as follows: (1) Attorney Perduk in the amount of $23,298.21; (2) Attorney Scanlon in the amount of $45,123.00; (3) the Thompson Defendants in the amount of $5,062.50; and (4) Receiver Collins in the amount of $61,384.51.

{¶11}  The Bressis appealed the order granting summary judgment to the Thompson Defendants and Attorneys Scanlon and Perduk and the order granting attorney fees.  In so doing, the Bressis raised two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED BY GRANTING THE JOINT MOTION OF DEFENDANT SCANLON AND DEFENDANT PERDUK FOR SUMMARY**

---

[3] We note some alternations were in the original quote, and some were added in this decision.

**JUDGMENT AND BY GRANTING THE MOTION OF DEFENDANTS, JERADINE THOMPSON, ET AL. FOR SUMMARY JUDGMENT.**

{¶12} In their first assignment of error, the Bressis argue the trial court erred in granting summary judgment in favor of the Thompson Defendants and Attorneys Scanlon and Perduk. Specifically, the Bressis argue: (1) the trial court committed plain error because the Bressis were not parties to the Collins Action and therefore lacked standing; and (2) the trial court erred because the parties and claims in this action are "distinct and different" from those in the Collins Action. We address these arguments separately because the Bressis failed to raise their standing argument in the trial court and have forfeited all but plain error.

{¶13} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law;" and (3) viewing the evidence most strongly in favor of the nonmoving party, "reasonable minds can come to but one conclusion" and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the nonmoving party and must resolve any doubt in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶14} The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm as follows:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶15} "The doctrine of res judicata bars any claims between the parties that were either litigated or could have been litigated in a prior proceeding*." Santomauro v. SUMSS Property Mgt., LLC*, 9th Dist. Summit No. 29948, 2023-Ohio-280, ¶ 20, quoting *C.K. v. D.K.*, 9th Dist. Lorain No. 21CA011733, 2022-Ohio-647, ¶ 22. "It encompasses 'the concepts of both claim preclusion and issue preclusion.'" *Santomauro* at ¶ 20, quoting *Hall v. Zimmerman*, 9th Dist. Lorain No. 20CA011639, 2021-Ohio-270, ¶ 14. "[T]he claim preclusion concept holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." (Alteration in original.) *Wicks v. Lover's Lane Mkt*., 9th Dist. Summit No. 30019, 2022-Ohio-2652, ¶ 24, quoting *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd*., 81 Ohio St.3d 392, 395 (1998). "The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical

or different." *Id.*, quoting *Fort Frye Teachers Assn.* at 395. The doctrine of res judicata "'promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a [litigant] has already received a full and fair opportunity to be heard.'" (Alteration in original.) *Santomauro* at ¶ 20, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 18. "The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *State ex rel. Armatas v. Plain Twp. Bd. of Zoning Appeals*, 160 Ohio St.3d 161, 2020-Ohio-2973, ¶ 9, quoting *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990).

**Standing -Plain Error**

{¶16} The Bressis contend the trial court committed plain error by granting summary judgment in favor of the Thompson Defendants and Attorneys Scanlon and Perduk on the basis of res judicata because the Bressis were not parties to the Collins Action "as expressly held by this Court in *Collins v. Geiger*, 9th Dist. Summit No. 29361, 2020-Ohio-21, ¶ 27-28[.]"

{¶17} "To establish plain error, one must show (1) an error occurred, i.e., a deviation from a legal rule, (2) the error is plain, i.e., an obvious defect in the proceedings, and (3) the error affected a substantial right, i.e., affected the outcome of the proceedings." *Norton v. Dominion Energy Servs., Inc.*, 9th Dist. Summit No. 29543, 2021-Ohio-1278, ¶ 9, quoting *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 5, citing *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 36. In *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121-122 (1997), the Supreme Court of Ohio explained:

> Although in criminal cases "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court," Crim.R. 52(B), no analogous provision exists in the Rules of *Civil* Procedure. The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional

circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.

\* \* \*

While invocation of the plain error doctrine is often justified in order to promote public confidence in the judicial process, "[it is doubtful that] the public's confidence in the jury system is undermined by requiring parties to live with the results of errors that they invited, even if the errors go to 'crucial matters.' In fact, the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice." \* \* \* [I]t is well established that failure to follow procedural rules can result in forfeiture of rights.

\* \* \*

[W]e \*\*\* reaffirm and emphasize that the doctrine is sharply limited to the *extremely rare* case involving *exceptional* circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself.

(Emphasis in original.)

{¶18} Here, the Bressis' brief focuses on this Court's decision in *Collins*, 2020-Ohio-21, at ¶ 27-28, as the reason the trial court allegedly committed plain error. However, a review of *Collins* demonstrates Mr. Bressi was, in fact, a party to the appeal as the appellant who challenged the trial court's decision regarding the validity and enforceability of the CBMSA. As to the Bressis' standing argument, this Court noted in *Collins* at ¶ 27, that, as of January 15, 2018, Mr. Bressi "was no longer a plaintiff in this action" when he filed the motion for leave to amend the complaint. Moreover, although Mr. Bressi argued Receiver Collins acted beyond the scope of his powers in filing the amended complaint by including allegations "personal to [Mr.] Bressi[,]" we explained:

> [Mr.] Bressi never objected to or challenged [Receiver Collins'] actions, nor did he move to intervene in the action or to invoke any procedure to seek a determination that he was a real party in interest with the capacity and standing to assert any claims in this action. Instead, [Mr.] Bressi merely attempted to "amend" a complaint to which he was no longer a party.

*Id*. at ¶ 28.

{¶19} Although this Court indicated Mr. Bressi did not have standing to file an *amended* complaint in the Collins Action, Mr. Bressi had limited standing in the lawsuit. Indeed, Mr. Bressi could have used his limited standing to invoke other procedural avenues, such as filing a motion to intervene, in order to assert all claims regarding the enforceability of the CBMSA. Mr. Bressi, however, failed to do so. The failure to follow procedural rules can result in forfeiture of rights, and, as stated in *Goldfuss* at 121, litigants bear the cost of their own invited errors. Indeed, "[t]he plain error doctrine should never be applied to reverse a civil judgment * * * to allow litigation of issues which could easily have been raised and determined in the initial trial." *Id*. at 122.

{¶20} Further, while the Bressis' brief details the alleged "plain error" of the trial court, it does not develop an argument regarding why this is "the *extremely rare* case involving *exceptional* circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself." (Emphasis in original.) *Id*. As such, this Court will not craft an argument on the Bressis' behalf. *See State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 16 ("Where an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him."). *See also* App.R. 16(A)(7).

{¶21} Thus, the Bressis' plain error argument is not well-taken.

**Parties and Claims are Separate and Distinct**

{¶22} The Bressis also argue the trial court erred in granting summary judgment to the Thompson Defendants and Attorneys Scanlon and Perduk on the basis of res judicata and collateral estoppel because the parties and claims in this action are "distinct and different" from the parties and claims in the Collins Action. In opposition to this argument, the Thompson Defendants and

Attorneys Scanlon and Perduk assert the parties in the Collins Action are the same, or in privity, with the parties in this action, and the Bressis had a full and fair opportunity to present all of their arguments in the Collins Action, but failed to avail themselves to all grounds for relief.

{¶23} As the Supreme Court of Ohio stated in *Armatas*, 160 Ohio St.3d 161, 2020-Ohio-2973, at ¶ 9:

> Res judicata bars a second action when (1) a court of competent jurisdiction rendered a valid, final judgment on the merits in an earlier action, (2) the second action involves the same parties or their privies, (3) the second action raises claims that were or could have been litigated in the first action, and (4) the second action arises out of the same transaction or occurrence that was the subject of the first action.

Here, the trial court rendered a valid, final judgment on the merits regarding the enforceability of the CBMSA, which Mr. Bressi appealed, and this Court affirmed. Further, Mr. Bressi was originally a party to the Collins Action, until Receiver Collins stepped into his shoes, pursuant to the parties' CBMSA, and an order of appointment from the trial court. The December 28, 2016 trial court order appointing Receiver Collins stated, in relevant part:

> This matter came on to be considered upon the request of the parties through their respective counsel that Attorney John C. Collins be appointed as a [r]eceiver by this [c]ourt in this action for the specific purpose of being the assignee of [Mr. Bressi's] rights and interest in Summit Pain Specialists, Inc. along with certain specified rights to pursue his claims in related ligation, including any claims that have yet to asserted.

> The request of the parties to appoint a [r]eceiver is part of their settlement agreement which will resolve all the remaining claims in this proceeding and permit the Plaintiffs to attempt to recover additional amounts pursuant to that settlement agreement.

Receiver Collins then litigated Mr. Bressi's claims against Summit Pain Specialists, Inc. and SPS I, LLC, d/b/a Summit Medical Management Services in an attempt to remedy the alleged misappropriation of certain corporate assets by Mr. Bressi's former partners and the repayment of credit lines allegedly due to Mr. Bressi in order to preserve these assets for the collective purpose

of satisfying the terms of the CBMSA. *See Collins*, 2020-Ohio-21, at ¶ 2-4. *See O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, ¶ 9, citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 114 (1969), overruled in part on other grounds, *Grava v. Parkman*, 73 Ohio St.3d 379 (1995) ("Privity was formerly found to exist only when a person succeeded to the interest of a party *or had the right to control the proceedings or make a defense in the original proceeding*" but "[a]n interest in the result of and active participation in the original lawsuit may also establish privity."). (Emphasis added.) *See also Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, ¶ 8, quoting *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000) ("We have previously stated that '[w]hat constitutes privity in the context of res judicata is somewhat amorphous.' [and] have applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine. Thus, 'a mutuality of interest, including an identity of desired result,' may create privity.").

**{¶24}** As such, in the Collins Action, Receiver Collins was in privity with Mr. Bressi because they both had a mutual interest, or a desired result, to recover money and assets due and owing to Mr. Bressi in satisfying the terms of the CBMSA. Further, because everyone shared this mutual interest and goal, the Thompson Defendants and their counsel were also in privity with Receiver Collins. Moreover, although Mr. Bressi claims he was not a "party" or privy to the Collins Action, for purposes of challenging the CBMSA, Mr. Bressi filed an appeal as a party-appellant in the Collins Action, and this Court affirmed the trial court's decision. Mr. Bressi did not seek further appeal of our decision in the Collins Action to the Supreme Court of Ohio. Additionally, in the present action, the Bressis raise claims pertaining to the enforceability of the CBMSA, which by their own admissions in the complaint, could have been filed in the Collins Action. Finally, the Thompson Action, the Collins Action, and the present matter are all connected

and arise out of issues relating to the CBMSA. *Compare Armatas* at ¶ 14. ("Because both lawsuits involve Armatas's effort to challenge Ferrara's September 2016 decision, they arise out of the same transaction or occurrence for purposes of applying res judicata.").

**{¶25}** Thus, even in viewing the facts in a light most favorable to the Bressis, the trial court did not err in granting summary judgment in favor of the Thompson Defendants and Attorneys Scanlon and Perduk.

**{¶26}** Accordingly, the Bressis' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED BY GRANTING THE MOTION FOR SANCTIONS FILED BY RECEIVER JOHN C. COLLINS, ESQ. AND BY GRANTING THE JOINT MOTION OF DEFENDANTS SCANLON, PERDUK AND THEIR 46 INDIVIDUAL CLIENTS TO RECOVER ATTORNEY FEES, COSTS AND EXPENSES PURSUANT TO R.C. 2323.51.**

**{¶27}** In their second assignment of error, the Bressis argue the trial court abused its discretion in granting Receiver Collins' motion for sanctions and the Thompson Defendants' and Attorney Scanlon and Perduk's motion for attorney fees. Specifically, the Bressis argue the trial court abused its discretion: (1) by awarding sanctions as a result of its "erroneous" res judicata and collateral estoppel analysis; (2) by awarding attorney fees to recover monies on behalf of third-party insurance carriers; and (3) by awarding unreasonable attorney fees. We note the trial court only awarded attorney fees pursuant to R.C. 2323.51, and we limit our discussion accordingly.

**{¶28}** The analysis of a claim pursuant to R.C. 2323.51(A)(2) "boils down to a determination of[:] (1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." *P.N. Gilcrest Ltd. Partnership*, 9th Dist. Wayne No. 10CA0035, 2011-Ohio-2990, at ¶ 32, quoting *Ceol v. Zion Industries*, 81 Ohio App.3d 286, 291

(9th Dist.1992). R.C. 2323.51(A)(2)(a) defines "frivolous conduct," in relevant part, as conduct of a party to a civil action or the party's attorney that satisfies one of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

**{¶29}** "R.C. 2323.51 does not purport to punish a party for failing on a claim." *Oehler v. McAdams*, 9th Dist. Summit No. 28903, 2019-Ohio-1976, ¶ 12, quoting *Harold Pollock Co., LPA v. Bishop*, 9th Dist. Lorain No. 12CA010233, 2014-Ohio-1132, ¶ 19. Rather, it "must involve egregious conduct." *Id.*, quoting *State ex rel. DiFranco v. South Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, ¶ 15. "On appeal, [this court] will not reverse a lower court's decision on whether to award sanctions under R.C. 2323.51 absent a showing of an abuse of discretion." (Alteration sic.) *Slattery v. Seemray* L.L.C., 9th Dist. Summit Nos. 30346, 30459, 2023-Ohio-2367, ¶ 34, quoting *DiFranco* at ¶ 13, quoting *State ex rel. Bell v. Madison Cty. Bd. of Commrs.*, 139 Ohio St.3d 106, 2014-Ohio-1564, ¶ 10. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶30} In granting the motions of Receiver Collins, the Thompson Defendants, and Attorneys Scanlon and Perduk, as to their claims for attorney fees pursuant to R.C. 2323.51, the trial court stated, in relevant part:

> Upon due consideration, the [c]ourt finds that Defendants' Motions filed pursuant to R.C. 2323.51 are well taken. The [c]ourt already determined in this action, as set forth in its August 29, 2022 [] Journal Entry, that "[the Bressis'] lawsuit lacks any merit, either in law, or, on the facts."
>
> * * *
>
> This [c]ourt, applying an objective standard based on the court record, finds the [Bressis] have used this case as a subterfuge to avoid the possibility of being held in contempt of court in Case No. CV 2014-04-2198.
>
> On August 19, 2020, this [c]ourt filed an entry on the [c]lerk's docket scheduling a hearing for September 8, 2020, as to why the [Bressis] should not be held in contempt of court for refusing to sign authorization forms so [the Thompson Defendants'] counsel could obtain records from the law firm of Hanna, Campbell & Powell that was a condition of the [CBMSA].
>
> On September 4, 2020, this [c]ourt conducted a telephone status conference with counsel. [The Bressis] had recently retained Attorney Pierce Walker and Attorney Laura Mills to represent them after they discharged their previous attorney * * *. During the conference, Attorney Walker informed the [c]ourt that he had filed this lawsuit. This [c]ourt, in an abundance of caution, and without the opportunity to view the merits of the new [c]omplaint, decided to not proceed with the contempt hearing that was previously scheduled.
>
> Serendipitously, not only did the filing of the new case halt the contempt hearing, but Attorney Walker and Attorney Mills filed a motion to stay proceedings in four other cases involving the Bressis[] causing the proceedings in those cases to be further delayed, as well.
>
> In the [c]ourt's opinion, to add insult to injury, the new lawsuit unnecessarily added the 46 women who were compromised by [Mr.] Bressi during their medical treatment. This case has required them to re-live past events when they in good faith agreed to settle this case * * *. Looking at this case objectively from the court record there can be no other reason to add these women as Defendants without one shred of evidence to substantiate [the Bressis'] claims that [the 46 women] committed fraud, breached the CBMSA, or induced [the Bressis] to reach a settlement, without one iota of evidence to support the outlandish accusations.
>
> * * *

> This [c]ourt has presided over the five civil cases involving the [Bressis], starting in 2013. The delay tactics employed by [the Bressis] to circumvent court rulings are not new tactics. Over the years, the [Bressis] have delayed the proceedings in other cases by frequently changing counsel. * * *

> After consideration of the motions, briefs, exhibits, case law and the Zoom testimony on Attorney fees, the [c]ourt finds that * * * the conduct of the [Bressis] and their attorneys warrant[s] sanctions pursuant to R.C. 2323.51.

> The conduct of the [Bressis] and their attorneys in filing this frivolous lawsuit having no merit or basis in law or fact, and with the purpose of delaying their contempt hearing in Case NO CV 2014-04-2198, has resulted in needless delay, expenditure of attorney fees, and caused harassment to the 46 women that had the courage to come forward and pursue their claims against former [Mr.] Bressi in the 2013 personal injury case.

> * * *

> After ten * * * years of the [Bressis] misusing the [c]ourts for their own personal gain, and at the expense and delay to other parties, [they] have been oblivious to the financial and emotional harm done to other litigants. Enough is enough!

Based upon this record, we cannot say the trial court abused its discretion in awarding attorney fees, pursuant to R.C. 2323.51, to Receiver Collins, the Thompson Defendants, and Attorneys Scanlon and Perduk. The evidence in the record supports the trial court's determination that this was a frivolous action used to harass the Thompson Defendants and create delay and expense for the other litigants. As indicated in the trial court's August 29, 2022 Journal Entry, the Bressis' lawsuit "lacks any merit either in law or on the facts." Receiver Collins, Attorneys Scanlon and Perduk, and Attorney William Dowling, the Defendants' expert witness, testified at the attorney fee hearing on December 13, 2022. Further, on December 15, 2022, Attorney Michael Moran testified on behalf of the Thompson Defendants. On that same day, Attorney Richard Arnold was called to testify on behalf of the Bressis. All parties had the opportunity to cross-examine the witnesses. The record contains no evidence that the attorney fees were unreasonable, as the Bressis contend. In fact, Attorney Dowling, in his expert capacity, testified the attorney fees incurred in this matter were "low" and "quite reasonable[.]"

**{¶31}** Finally, the Bressis' argument regarding recovering monies paid by third-party insurance carriers also lacks merit. *In State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, ¶ 23-25, the Supreme Court of Ohio directly addressed an argument similar to the Bressis' erroneous argument as follows:

> Striker next asserts that the court of appeals abused its discretion by awarding $3,503 in attorney fees when the city paid only $312 in attorney fees. Under R.C. 2323.51(B)(1), "[t]he court may assess and make an award to any party to the civil action or appeal who was *adversely affected* by frivolous conduct," and the award may include "reasonable attorney's fees * * * *incurred* in connection with the civil action or appeal." (Emphasis added.)
>
> Although the city paid only $312 in attorney fees, the full amount of $3,503 in attorney fees was incurred by the city and the insurance company acting on behalf of the city in defending the clerk against the frivolous assertions Striker made in his public-records case. As the court of appeals explained, "the insurance carrier * * * is entitled to recoup the rewards if sanctions are granted." [*State ex rel. Striker v. Cline*, 5th Dist. Richland No. 09CA107,] 2011-Ohio-983, at ¶ 31.
>
> Therefore, because the reasonable attorney fees incurred as a result of Striker's frivolous assertions were $3,503, the court of appeals did not abuse its discretion in awarding the clerk that amount under R.C. 2323.51(B)(1). *A contrary interpretation would penalize parties that have the foresight to obtain liability insurance and would condone frivolous conduct against them.* We refuse to construe the frivolous-conduct statute to produce such an unreasonable result.

(Additional emphasis added.)

**{¶32}** Thus, based upon the foregoing, the trial court did not abuse its discretion in awarding attorney fees, pursuant to R.C. 2323.51, to Receiver Collins, the Thompson Defendants, and Attorneys Scanlon and Perduk.

**{¶33}** Accordingly, the Bressis' second assignment of error is overruled.

### III.

**{¶34}** For the reasons stated above, the Bressis' two assignments of error are overruled. The Judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

LAURA L. MILLS and PIERCE C. WALKER, Attorney at Law, for Appellants.

MICHAEL MORAN, Attorney at Law, for Appellees.

GEORGE S. COAKLEY, Attorney at Law, for Appellees.

ORVILLE L. REED, III, Attorney at L aw, for Appellee.

THOMAS F. HASKINS, JR., Attorney at Law, for Appellee.